**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Glenda R. Lyvers, | ) | Civil Action No. 02:10-CV-1348-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Plaintiff Glenda R. Lyvers challenges a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court affirms the decision of the Commissioner.

## I.  BACKGROUND

    On January 22, 2007, Plaintiff filed an application for SSI, with a protective date of January 7, 2007, and an alleged onset date of July 12, 2006. R. 109-111, 14. Plaintiff claimed that she was unable to work due to mental problems, a right ovarian cyst, gastroesophageal reflux disease, allergies, and muscle spasms. R. 140. Plaintiff's claim was denied on March 1, 2007. R. 72-76. Plaintiff requested reconsideration, and her claim was denied again on August 10, 2007. R. 77-81. After retaining counsel, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). R. 82-87. The ALJ held a *de novo* hearing on November 12, 2008. R. 27-69.

**A.     Hearing Before the ALJ**

    Plaintiff testified at the hearing that she had finished the ninth grade but had been in

special education classes, and that she could read and write but could tell time only on a digital clock and could not handle money or write a check. R. 31-33. Plaintiff stated that she lived with Ronnie Layton and was entirely dependent upon him. R. 33, 36. Plaintiff testified that she had a drivers' license and had taken a written test on a computer in order to get it, but that she was currently unable to drive by herself. R. 34-35. Plaintiff stated that she enjoyed playing games on the computer and visiting websites. R. 35.

In response to a question asking the main reason why Plaintiff was unable to work, she answered: "It's because I can't be around a whole lot of people, I just get, stomach gets knotted up and I just get nervous and just can't be around anybody, a whole lot of people." R. 38. Plaintiff discussed her experience working at Waffle House for five weeks in 2006 before she was fired for being too slow, getting orders wrong, and frequently crying. R. 36-37 & 44. Plaintiff stated that she "couldn't stay focused on anything" and didn't know how to count money, work a register, write down orders, read orders to the chef, or calculate totals. R. 43. Plaintiff also testified that she had tried to find housekeeping work but that after about one week she was fired because she "couldn't keep . . . concentrating on what [she was] supposed to be doing." R. 51-52. Plaintiff stated that she could not go to Vocational Rehabilitation to be retrained because of her nervousness being around people and "[j]ust knowing that [she has] to be somewhere." R. 53.

Plaintiff described her history of abuse at the hands of her ex-husband before their separation in 2001 and divorce in 2007. R. 48-50. Plaintiff testified that before she lived with Mr. Layton, her three children, who lived with her before growing up and moving away, had to help her with tasks such as grocery shopping. R. 47-48 & 53-54. Plaintiff stated that she

sometimes forgot appointments and her medications, and that she could not handle these things without Mr. Layton's help. R. 52-53. Plaintiff stated that she could bathe and dress herself and could mostly clean the house, but needed help "keeping on track." R. 51.

Plaintiff's companion, Ronnie Layton, also testified at the hearing. *See* R. 55-64. Mr. Layton stated that Plaintiff had been living with him for about two years, and that during that time they had only been apart on one occasion. R. 58. He stated that "[t]here is no way that [Plaintiff] could possibly drive anywhere," and that "she cannot really make a decision." R. 60-61. Mr. Layton testified that there was no way that Plaintiff could be on time for an appointment or job because "she wouldn't have any way of waking herself up at a certain time" and because "she cannot tell time unless it's a digital clock and she wouldn't begin to know how to set an alarm clock." R. 61-62. Mr. Layton stated that Plaintiff had "to be reminded of things that need to be done . . . and when to do them," and that he "wouldn't think of leaving her home by herself one day." R. 63. He related that Plaintiff had mixed up medications, neglected personal hygiene, and left the stove on, and concluded that "[s]he just cannot conduct herself on a daily basis." *Id.*

Coretta Harrelson, a Vocational Expert ("VE"), also testified at the hearing. *See* R. 64-68. In response to the ALJ's hypothetical, the VE testified that for "an individual of [Plaintiff's] age, education, [and] past job experience," who "[b]ecause of mental health problems is limited to unskilled work, a low stress environment . . requiring few decisions [and] no interaction with the public," there are jobs available in the national economy. R. 66. The VE listed examples such as garment shaker, sock folder, wet wash assembler, and packaging line attendant, and identified at least 500,000 jobs at the light and medium levels of exertion in the national

economy that would be appropriate for Plaintiff under the stated conditions. *Id.* In response to questions from Plaintiff's attorney, the VE stated that a person who could not work alone or with only minimal supervision, or who could not remember short and simple instructions without prompting, would have difficulty remaining employed. *Id.* at 67-68. The VE also responded that a person who "couldn't complete a normal workday or work week without any interruptions from psychologically based symptoms" would not be able to work full-time in a competitive industry. *Id.* at 68.

**B.     ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 9, 2007. R. 17. The ALJ also found that Plaintiff has multiple severe impairments, specifically depressive disorder, personality disorder, and probable borderline intellectual functioning. *Id.* However, the ALJ found that Plaintiff's condition did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (a "Listed Impairment"). R. 18. In particular, the ALJ found that Plaintiff did not meet the criteria for listings 12.02 (organic mental disorders), 12.05 (mental retardation), or 12.08 (personality disorders) because her impairments "cause no greater than moderate restrictions of daily activity and moderate difficulties maintaining social functioning." *Id.*

The ALJ found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but is restricted to unskilled, low stress work [work requiring few decisions] with no requirement for interacting with the public." R. 19 (alteration in original). The ALJ stated that "[i]n making this finding, [he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence." *Id.* The ALJ also stated that he "considered opinion evidence" and "considered the combined effect and interrelationship of all impairments." *Id.* The record before the ALJ included several hundred pages of medical reports concerning Plaintiff's mental and physical health between 2006 and 2008. *See* R. 235-514. The ALJ noted that while "[r]eview of mental health treatment records shows observations of some occasional psychomotor slowing with some sadness, signs of depression and anxiety, occasional labile affect, report of poor remote memory, and one report of suicidal ideas without a plan," "most of the evaluations show that the claimant displayed an appropriate mood and affect with normal motor functioning; spontaneous speech; goal-directed thoughts; cooperative and pleasant attitude; and no suicidal ideations, homicidal ideations, or delusions." R. 20-21.

The ALJ discussed a July 2007 psychological evaluation with Dr. Wurster, who found that although Plaintiff's test results indicated mental retardation, "the test results were not a valid index of [her] mental capabilities." R. 21. Dr. Wurster "observed that [Plaintiff] readily gave up and put forth little effort on testing," ultimately concluding that Plaintiff most likely had borderline intellectual functioning rather than mental retardation. *Id.* Dr. Wurster also found that a WRAT (Wide Range Achievement Test) assessment indicated that Plaintiff had the ability to read and spell at a fourth grade level. *Id.*

The ALJ also discussed a November 16, 2006 report of an intake interview at the Clarendon Behavioral Health Clinic. This report indicated a global assessment of functioning ("GAF") of 30 for Plaintiff, which the ALJ characterized as "indicat[ing] inability to function in almost all areas." R. 22. The ALJ compared this report with numerous other assessments, including one taken less than two weeks after the November 16, 2006 report, which noted a GAF

of between 55 and 65. *Id.* The ALJ characterized a GAF of 60 as "indicat[ing] only moderate symptoms." *Id.* The ALJ gave little weight to the Clarendon report indicating a very low GAF, finding that the low assessment was "not supported by [Clarendon's] own progress reports and the lack of referral for more intensive care" and "specifically and persuasively contradicted by the reports, findings, and assessments, of other treating mental health personnel." *Id.*

The ALJ noted that he had "evaluat[ed] the claimant's subjective allegations and those from her boyfriend." R. 23. The ALJ found that although Plaintiff's alleged symptoms were consistent with her medically determinable impairments, her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not substantiated by the total record and not credible to the extent they are inconsistent with" the ALJ's residual functional capacity determination based on the medical reports. *Id.* The ALJ found further that "[t]he evidence does not show strength deficits, circulatory compromise, neurological deficits, fasciculations, fibrillations, or muscle atrophy or dystrophy that are often associated with longstanding, severe or intense pain, physical inactivity, or depression." *Id.*

The ALJ found that Plaintiff's "described daily activities indicate a fairly active and varied lifestyle and do not represent a marked or extreme restriction of activities, constriction of interests, or impaired social function." R. 24. The ALJ observed that "[d]espite the claimant's allegations of poor ability to read and write, she had indicated that her activities included 'writing'" and "playing computer games and searching sites on the Internet." *Id.* The ALJ noted various inconsistencies in Plaintiff's reports of her educational history, and suggested that in light of her demonstrated "less than optimal motivation for work" there was "doubt [about] her overall credibility in reporting her true symptoms and level of function." *Id.* The ALJ

concluded that "[t]he subjective allegations of limitations are not supported by the weight of the evidence, which includes review of both medical and non-medical evidence." *Id.*

**C.     Appeals Council's Denial and Subsequent Favorable Decision**

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 12, 2010, and therefore the decision of the ALJ became the final decision of the Commissioner. R. 1-3. On October 28, 2010, based on an application for SSI filed after the application at issue in the present case, a different ALJ issued a decision finding that Plaintiff was disabled as of December 5, 2008.[1] ECF No. 12-1.

**D.     District Court Review**

On May 24, 2010, Plaintiff filed the present action pursuant to Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), seeking judicial review of the Commissioner's final decision denying her claim for SSI. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(a), D.S.C., this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On November 9, 2010, Plaintiff filed a brief advancing three specific challenges to the ALJ's decision. First, Plaintiff argued that because she was found to be disabled in a subsequent SSI application, the case should be remanded for consideration in light of this new evidence. ECF No. 12 at 1. Second, Plaintiff argued that because the ALJ failed to make specific credibility findings in disregarding Ronnie Layton's testimony, the decision was not supported by substantial evidence. *Id.* Third, Plaintiff argued that the ALJ's finding regarding Plaintiff's residual capacity was not supported by substantial evidence because

---

[1]     Both parties contend that the latter date is apparently a typographical error and should instead be December 15, 2008, the date Plaintiff filed her subsequent application.

the record reflected "undisputed severe mental limitations that would render her unable to sustain an ordinary routine without special supervision and unable to complete a normal workday or workweek without interruptions from psychologically-based symptoms." *Id.*

On December 21, 2010, the Commissioner filed a Memorandum in support of the decision denying Plaintiff's claims. ECF No. 13. Plaintiff filed a response to the Commissioner's Memorandum on January 7, 2011. ECF No. 14. On August 3, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision to deny Plaintiff's claims be affirmed. ECF No. 18. On August 22, 2011, Plaintiff filed a brief objecting to the R&R. ECF No. 19. Plaintiff's three objections are essentially restatements of the three arguments in her original brief. *See id.*, ECF No. 12. The Commissioner responded to Plaintiff's objections on September 6, 2011. ECF No. 21.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to determining whether the correct law was applied and whether the factual findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*,

907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," or "more than a mere scintilla but . . . somewhat less than a preponderance." *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The role of this Court is not to review the evidence *de novo* or resolve conflicts in the evidence. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971). Rather, the Commissioner's factual determinations "must be upheld if [they are] supported by substantial evidence in the record as a whole." *Howard v. Sec'y of Health & Human Serv.*, 741 F.2d 4, 8 (2d Cir. 1984). "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### III. APPLICABLE LAW

A claimant is considered disabled only if she demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that her physical and/or mental impairments "are of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step evaluation process to determine whether a claimant is disabled. The adjudicator must consider whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment or impairments; (3) had a

condition which met or equaled the severity of a Listed Impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4). If the claimant is found to be either disabled or not disabled at any step, no further inquiry is necessary.

If a claimant is found to have one or more severe impairments, the adjudicator must determine whether the impairment or combination of impairments meets, or is medically equivalent to, the criteria of a Listed Impairment. 20 C.F.R. § 416.920(d), 416.925 & 416.926. If the claimant's impairments meet or equal the criteria of a listing and meet the duration requirement, the claimant is found to be disabled. 20 C.F.R. § 416.920(d) & 416.909. Otherwise, the adjudicator must determine the claimant's "residual functional capacity"; that is, the claimant's ability to work despite having a severe impairment. *See* C.F.R. § 416.920(e). The adjudicator then determines whether, based on this residual functional capacity and other relevant factors, the claimant is able to resume past work or perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(f)-(g).

## IV.  DISCUSSION

As the Magistrate Judge noted, Plaintiff does not argue that the ALJ erred in finding that Plaintiff's condition did not meet or equal the criteria of a Listed Impairment. *See* ECF No. 18 at 12 n.4. Rather, all three of Plaintiff's arguments focus on her objections to the ALJ's finding that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but is restricted to unskilled, low stress work [work requiring few decisions] with no requirement for interacting with the public." R. 19 (alteration in original).

**A.    Remand Based on a Subsequent Favorable Decision**

Plaintiff argues that the subsequent ALJ decision finding her disabled less than two years after she was found to be not disabled constitutes new material evidence that calls for a remand to determine the correct onset date. ECF No. 12 at 16-17. "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff cites *Reichard v. Barnhart*, 285 F. Supp. 2d 728 (S.D.W. Va. 2003), where the District Court remanded a decision finding the plaintiff not disabled after a subsequent decision had found the plaintiff to be disabled starting less than one week after the prior decision. The *Reichard* Court held that when "disability is found upon subsequent applications on substantially the same evidentiary background as was considered with respect to prior applications . . . the disability onset date might reasonably be sometime prior to" the decision in the prior application. *Id.* at 736 n.9. The Commissioner cites *Allen v. Commissioner of Social Security*, 561 F.3d 646, 653 (6th Cir. 2009), which holds that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)."

Here, contrary to Plaintiff's assertion, there was a substantial amount of "significantly different medical evidence" available in her subsequent application. The second ALJ's discussion of Plaintiff's residual functional capacity relied upon a considerable amount of evidence from 2009 and 2010 that was not before the first ALJ. *See* ECF No. 12-1 at 6-8. The second ALJ considered several psychological reports from 2009 and 2010 that described a greater severity of symptoms and adverse impact upon daily life than many of the reports

considered by the first ALJ in 2008. *Id.* at 7. One of these reports also suggests a diagnosis of post-traumatic stress disorder that was not present in earlier reports. *Id.* Additionally, while at the time of the first ALJ's decision Plaintiff was found to have only some suicidal thoughts with no plan of action, the second ALJ's decision describes two apparently recent suicide attempts. *Id.*

Consistent with *Allen*, this Court finds that a subsequent favorable decision, in itself, cannot be "new" and "material" evidence under § 405(g). A new decision on the same facts may employ a different analysis, but this analysis is not "evidence." If the subsequent decision reveals new and material facts that existed at the time of the first decision but were not considered, § 405(g) may allow a remand upon a showing of good cause for failure to present the evidence earlier. But where, as in this case, a subsequent decision is based largely upon facts that occurred after the time of the first decision, a remand is not appropriate.

**B.     The ALJ's Credibility Determinations**

Plaintiff notes that "[t]he ALJ found that there were jobs consistent with her limitations in the unskilled category," but argues that, based on the VE's testimony, "[e]ach of these jobs . . . would be eliminated if Mr Layton's testimony that [Plaintiff] could not work without special supervision and without interruptions from psychologically based symptoms was found credible." ECF No. 12 at 16. Accordingly, Plaintiff contends, because the ALJ found Mr. Layton's testimony not credible, the ALJ should have stated "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.* at 18.

When symptoms cannot be determined by objective medical evidence alone, the ALJ must consider the claimant's statements about symptoms along with the rest of the relevant

evidence in the case record and determine the claimant's credibility. *See* Social Security Ruling ("SSR") 96-7p; 20 C.F.R. § 404.1529. In making such a credibility determination, the ALJ must "consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p at *1. The ALJ must specify the reasons for the determination and the evidence supporting it. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ stated that he had "evaluat[ed] the claimant's subjective allegations and those from her boyfriend," and correctly stated the factors to be considered relevant to such an evaluation. R. 23. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not substantiated by the total record and not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* Although the ALJ did not give specific reasons for discounting Mr. Layton's credibility, the record shows that the ALJ discounted the testimony of both Plaintiff and Mr. Layton because it was contradicted by the weight of the medical evidence. Mr. Layton's testimony was largely duplicative of Plaintiff's, and both tended to portray Plaintiff as almost completely helpless in her activities of daily life and unable to perform even the most rudimentary tasks without supervision and prompting. The ALJ reviewed numerous medical reports in the record as well as Plaintiff's own prior statements and identified the evidence showing that Plaintiff's functional capacity was in fact significantly higher than described by Plaintiff and Mr. Layton. R. 20-24. The ALJ also considered "the reported observation that

[Mr. Layton] seemed to be [Plaintiff's] caretaker on one occasion" and noted that on the contrary Plaintiff "provided her own history" and "was alert, fully oriented, and conversant" on several other occasions.  R. 24.  This Court finds that the ALJ's conclusion was supported by substantial evidence.

C.      **The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Plaintiff challenges the ALJ's determination of her residual functional capacity, arguing that "substantial evidence does not exist to support the ALJ's finding that she can perform unskilled low stress work requiring few decisions with no requirement for interacting with the public."  ECF No. 12 at 23.  Rather, Plaintiff contends, "[t]he record as a whole demonstrates that her mental functioning was so low that she would have been unable to engage in a full range of work at any exertional level."  *Id.*

Plaintiff argues that the report of Dr. Wurster, on which the ALJ relied heavily in finding that Plaintiff was able to work, actually contradicts the ALJ's finding.  *See* ECF No. 19 at 4-5.  Plaintiff places much weight on Dr. Wurster's statement that Plaintiff "is seen as needing a psychiatric updating of her mental condition with regard to her being able to work full[-]time, after she has undergone some work training at the Vocational Rehabilitation workshop."  R. 352.  Plaintiff suggests that this statement, along with Dr. Wurster's statement that Plaintiff has "probable low borderline intelligence, though she is functioning somewhat below this level at the present time," indicates that Dr. Wurster found Plaintiff to be unable to perform any type of work at the time of the evaluation.  *Id.*  However, Dr. Wurster subsequently states that "[i]n [his] opinion, with proper medication, [Plaintiff] should be able to perform simple routine work tasks and of being able to concentrate at given tasks for two-hour periods of time, though possibly not

in a fast food restaurant." *Id.*

Dr. Wurster's report does not imply, as Plaintiff suggests, that Plaintiff was unable to perform simple, unskilled work. While Dr. Wurster did distinguish Plaintiff's "mental capabilities" from her lower "present mental functioning," he noted that her low functioning was at least partially attributable to her "limited effort throughout this evaluation" and suspected that Plaintiff "may well be exaggerating the severity of her symptoms somewhat as a basis for her not working." R. 351-52.

Plaintiff argues that "[t]he record contained significant evidence of [her] uncontradicted limitations regarding her mental capacity." The ALJ found that Plaintiff was "limited in her intellectual functioning at a borderline intellectual range." ECF No. 12 at 22; R. 21. However, the ALJ considered Dr. Wurster's report along with a variety of other evidence demonstrating Plaintiff's capacity in performing her daily activities and concluded that despite her mental limitations, Plaintiff had the capacity to perform simple, unskilled work under specified conditions. Because this determination is supported by substantial evidence in the record, this Court must affirm it.

## V. CONCLUSION

After a thorough review of the Report and Recommendation and the record in this case, the court hereby overrules Plaintiff's objections and adopts Magistrate Judge Hendricks' Report and Recommendation and incorporates it herein. The Commissioner's decision is, therefore, affirmed.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour

United States District Judge

September 28, 2011
Columbia, South Carolina